UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STEVEN HODGE, as Representative of the )
Class Claimants to the Wrongful Death of )
BARBARA HODGE, Deceased, )
)
    Plaintiff, )
)
    vs. ) Case No. 4:05CV1846SNL
)
BURLINGTON NORTHERN & SANTA FE )
RAILWAY CO., STEVEN BRIDGER, )
JAMES CASSITY, and ESTATE OF )
DONALD HODGE, by Estate Administrator )
Glenda Martinez, )
)
    Defendants. )

## MEMORANDUM

This matter is before the Court on plaintiff Hodge's motion to remand (#10), filed November 11, 2005. Extensive responsive pleadings have been filed and the matter is now ripe for disposition.

This railroad crossing wrongful death action was originally filed in the Circuit Court for the City of St. Louis seeking recovery for the wrongful death of decedent Barbara Hodge. Mrs. Hodge died when a car driven by her late husband Donald Hodge, in which she was a passenger, was struck by a train owned and operated by defendant Burlington Northern & Santa Fe Railway Co. (hereinafter referred to as simply BNSF). Defendants Bridger and Cassity were, respectively, the engineer and conductor of the subject train. Defendants BNSF, Bridger, and Cassity removed this case from state court on October 12, 2005 on the grounds that 1) defendant Donald Hodge was fraudulently joined in order to destroy diversity jurisdiction; and /or 2)

plaintiff's claims are completely preempted by federal legislation; i.e., the Federal Railroad Safety Act (FRSA), 49 U.S.C. §20101, *et. seq.*

Plaintiff Steven Hodge, son of decedents Barbara Hodge and Donald Hodge, has brought this wrongful death action against defendants for negligence. Specifically, he alleges that BNSF was negligent in failing to monitor and rectify failures of the audible warning system, failing to properly maintain the crossing and right-of-way, failing to properly construct the crossing, failing to train and instruct employees with regard to safety issues, failing to properly manage its trains, crews and crossing, and failing to properly operate its train; that Bridger and Cassity were negligent in failing to properly operate the train; and that Donald Hodge was negligent for failing to properly operate his motor vehicle and for failing to keep a careful lookout. His complaint is grounded in Missouri state law claims: failure to provide adequate signalization warning motorists of oncoming trains; failure to clear vegetation and other visual obstructions from right-of-way so as to provide motorists adequate visibility of oncoming trains pursuant to §389.665 R.S.Mo., failure to properly sound the train horn/whistle to warn motorists of the approach of the train pursuant to §389.990 R.S.Mo., and failure to slow, decelerate or stop the train to avoid a specific individual hazard. Although the plaintiff's complaint references two (2) federal regulations regarding railway safety, its claims are grounded in statutory and/or state common law.

All defendants were timely served with the state court complaint. Defendants BNSF, Bridger, and Cassity consented to removal; however, at the time of removal, defendant Hodge[1] had not consented. As of today's date, defendant Hodge has not joined in the removal to federal court.

---

[1] Although defendant Hodge's estate is the actual defendant (as allegedly represented by Glenda Martinez), for simplicity sake, the Court will refer to said defendant as simply "defendant Hodge".

Plaintiff asserts that his claims of negligence are all state law claims not subject to preemption under the FRSA. He further asserts that since all of the defendants were timely served but not all consented to removal, the removal was procedurally defective. Defendants argue that pursuant to recent Eighth Circuit and Eastern District of Missouri opinions, plaintiff's claims are "completely preempted" by the FRSA. They further argue that defendant Donald Hodge's consent was not necessary in that he was fraudulently joined; i.e, that Glenda Martinez, the Administrator of Donald Hodge's estate, cannot be both a plaintiff and defendant in this case. They assert that she stands as both a claimant against the estate and as an administrator of the estate. Plaintiff counters that the recent Eighth Circuit and Eastern District of Missouri cases do not mandate preemption in the instant case. He further argues that Ms. Martinez' interests as a wrongful death claimant are not the same interests as any rights she may have in the estate.

The Court will address the issue of preemption first since the question of federal question jurisdiction will rest on whether or not the claims are preempted. If they are, then the issue of diversity jurisdiction is immaterial. However, if the claims are not preempted, then the Court will address the matter of consent and whether defendant Donald Hodge's was fraudulently joined.

A state court action may be properly removed to federal court only if the case falls within the original jurisdiction of the federal courts. 28 U.S.C. §1441(a). If the basis for removal is federal question jurisdiction, the case may be removed without reference to the citizenship of the parties; however, where removal is based upon diversity of citizenship, the case is removable only if none of the defendants is a citizen of the forum state. 28 U.S.C. §1441(b).

Section 1331 confers original jurisdiction to the federal district courts "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction "founded on a claim or right arising under the Constitution, treaties or laws of the

United States" is known as federal question jurisdiction. 28 U.S.C. §1441(b). The absence of a finding of federal jurisdiction requires the removed case to be remanded to state court. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 96 (1998). In the Eighth Circuit, "all doubts about federal jurisdiction [must be resolved] in favor of remand." Transit Cas. Co. v. Certain Underwriters at Lloyd's of London, 119 F.3d. 619, 625 (8th Cir. 1997).

Removal based upon federal question jurisdiction is proper only if the claim asserting a federal question appears on the face of the plaintiff's properly pleaded complaint. "The judicially created well-pleaded complaint rule states that the basis of federal jurisdiction must appear on the face of the plaintiff's complaint and that removal to federal court is improper if federal jurisdiction is premised solely upon a plaintiff's allegation of an anticipated defense or upon a defendant's responsive pleading." Reding v. Federal Deposit Insurance Corp., 942 F.2d. 1254, 1257 (8th Cir. 1991)(citations omitted); *see also*, Rivet v. Regions Bank of Louisiana, et. al., 522 U.S. 470, 475 (1998); Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987); Gore v. T.W.A., 210 F.3d. 944, 948 (8th C. 2000); In Re Otter Tail Power Co., 116 F.3d. 1207, 1213 (8th Cir. 1997). Thus, a state court action is not removable where the federal question arises in the context of a defense, even if the defense is that the state claim is preempted by federal law. Rivet, 522 U.S. at 475; Gore, at 948-49; Otter Tail, at 1213 (citations omitted). The "well-pleaded complaint" rule makes the plaintiff "the master of the claim . . .". Caterpillar, 482 U.S. at 395.

However, a plaintiff's characterization of a claim as based solely upon state law is not dispositive of the issue as to whether federal jurisdiction exists. Peters v. Union Pacific R.R. Co., 80 F.3d. 257, 260 (8th Cir. 1996). A plaintiff cannot thwart the removal of a case by inadvertently, mistakenly, or fraudulently concealing the federal question with "artful pleading" of the federal cause of action in state law terms. *See,* Rivet, 522 U.S. at 475; Gore, at 950; State of

4

Minnesota by Attorney General Mike Hatch v. WorldCom, Inc., 125 F.Supp.2d. 365, 373 (D.Minn.2000).

Hand-in-hand with the "artful pleading" doctrine exists a narrow exception to the "well-pleaded complaint" rule. An independent corollary to the well-pleaded complaint rules is known as the "complete preemption doctrine". In instances where the preemptive force of the federal law is so clearly and strongly stated with respect to an area of state law, so "extraordinary", the state law claim is considered to be a federal claim from its inception and therefore, arising under federal law, making removal proper. Caterpillar, Inc., 482 U.S. at 392-93; Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Gore, at 948-49; Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d. 536, 543 (8th Cir. 1996); Peters, at 260 (citations omitted). The complete preemption doctrine applies only when a federal statute possesses "extraordinary" preemptive power, which the courts are reluctant to find exists. Magee v. Exxon Corp., 135 F.3d. 599, 601-02 (8th Cir. 1998)(citations omitted). Instances wherein federal law so completely preempts state law so as to support removal are rare; in fact, there have been only a handful of federal statutes found to have this "extraordinary" preemptive force warranting removal of any "well-pleaded" state-law claim; e.g. the Labor Relations Management Act (LMRA), 29 U.S.C. §185(a); the Employees Retirement Income Security Act (ERISA), 29 U.S.C. §1001 *et. seq.* The Eighth Circuit has heeded the cautionary advice of Justice Brennan, in his Metropolitan Life Ins. Co. concurrence[2], when stating that "[C]ongressional intent is the touchstone of the complete preemption analysis.

---

[2]"While I join in the Court's opinion, I note that our decision should not be interpreted as adopting a broad rule that *any* defense premised on congressional intent to pre-empt state law is sufficient to establish removal jurisdiction. The Court holds only that removal jurisdiction exists when, as here, "Congress has *clearly* manifested an intent to make causes of action . . . *removable to federal court*." In future cases involving other statutes, the prudent course for a federal court that does not find a *clear* congressional intent to create removal jurisdiction will be to remand the case to state court." Metropolitan Life Ins. Co., 481 U.S. at 67-68 (Brennan, J., concurring).

We must determine whether Congress has clearly manifested an intent to make a cause of action pleaded under state law removable to federal court, *see Metropolitan Life*, 481 U.S. at 66, 107 S.Ct. at 1547-48, mindful that in the ordinary case federal preemption is merely a defense to a plaintiff's lawsuit, *see id.* at 63, 107 S.Ct. at 1546." Magee, at 601-02; *see also*, Casino Resource Corp. v. Harrah's Entertainment, Inc., 243 F.3d. 435, 438 (8th Cir. 2001)(reiterating that "Congressional intent is the touchstone of the complete preemption analysis" when reviewing the preemptive effect of the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §2701 *et. seq.*).[3]

Not only do the doctrines of "artful pleading" and "complete preemption" compliment each other, but courts have found that in most cases they are so intertwined in the defendant's argument that they appear to raise the same question: are the plaintiff's claims so "completely preempted" that the only way to avoid removal due to federal question jurisdiction is through the "artful pleading" of the state-law claim? Thus, these courts have viewed "complete preemption" as a prerequisite to the application of the "artful pleading doctrine". *See,* Rivet, 522 U.S. at 475 ("The artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim"); Braco v. MCI WorldCom Communications, Inc., 138 F.Supp.2d. 1260, 1268, n.10 (C.D.Calif. 2001); Crump v. WorldCom, INC., 128 F.Supp.2d. 549, 559-60 (W.D.Tenn. 2001)(recognizing that the "artful pleading doctrine" in practice is subsumed by the "complete preemption doctrine"); Minnesota by Hatch, at 373.

---

[3]It is important in the analysis of the instant remand motion to keep in mind that two types of preemption exist: ordinary preemption and complete preemption. Ordinary preemption affords an affirmative defense in state court, it does not provide a basis for removal. "Complete preemption is to be distinguished from ordinary preemption, which is a defense that may be raised in state court but is not a proper basis for removal." Crump, at 554; *see also*, Braco, at 1269. "Federal-question jurisdiction is not created by a federal defense, including the defense of preemption, even if the defense is the only contested issue in the case." Magee, at 601 *citing* Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983).

The instant lawsuit presents the common situation wherein a federal issue is alleged to be involved in a state cause of action. In Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986), the United States Supreme Court held that if Congress did not create a private remedy for violation of the federal statute referenced in a plaintiff's complaint, the need to interpret or apply that federal statute to determine the merits of a state-law claim is insufficient to confer federal question jurisdiction. Merrill Dow, 478 U.S. at 811-13. More recently, the United States Supreme Court revisited the issue of federal question jurisdiction. In Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 125 S.Ct. 2363 (2005), the Supreme Court held that lack of a private right of action under federal law does not divest the court of federal jurisdiction when a state law claim contains a disputed and substantial question of federal law, so long as the federal and state balance is not disturbed. It noted that no single precise test existed for jurisdiction over federal issues embedded in state-law claims. It further recognized the fact that a court cannot refuse jurisdiction over a plaintiff's claims "simply because they appear in state raimant"; however, "federal issue" is not a buzzword for federal question jurisdiction whenever a state action embraces a federal point of law. Grable, 125 U.S. at 2368. "Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" Grable, 125 S.Ct. at 2368. Thus, under the Grable standard, a reviewing court's analysis must be based on whether there is a disputed and substantial question of federal law **and** whether exercising federal jurisdiction would disturb the delicate balance between federal and state judicial responsibilities.

Defendants contend that a Merrill Dow/Grable analysis is unnecessary because the plaintiff's claims are "completely preempted" under the recent cases of Lundeen, et. al. v.

7

Canadian Pacific Railway Co., et. al., 447 F.3d. 606 (8th Cir. 2006) and Gillenwater v. Burlington Northern and Santa Fe Railway Co., et. al., 435 F.Supp.2d. 959 (E.D.Mo. 2006). The Court has carefully reviewed both of these cases and finds that neither is controlling in the instant matter.

In Lundeen, *supra.*, a freight train derailment case, the plaintiffs asserted that the defendant railroad company had negligently inspected railroad tracks. The Eighth Circuit looked to the FRSA and the extent to which relevant regulations adopted pursuant to it addressed negligent track inspections. After reviewing the FSRA and three (3) other previous Eighth Circuit FRSA complete preemption cases[4], the Court found that the Lundeens' claims were completely preempted. It reasoned that the Lundeens' claims were akin to the situations present in Chapman, *supra.* and In re Derailment Cases, *supra.* wherein complete preemption was held to exist.

> "In *Peters* we found complete preemption: `Congress has
> expressly preempted state laws affecting railroad safety
> where the Secretary of Transportation has promulgated
> regulations,' as confirmed by "[t]he FRSA regulations
> explicitly set[ting] out a comprehensive administrative
> adjudication system for handling certification disputes,'
> which `directly apply to Peters' [state law] conversion
> claim.' 80 F.3d. at 262. Thus, we held `[a]ny issue raised
> in this area is a federal issue justifying removal.' In
> *Chapman*, however, we found no preemption as to common-
> law claims arising from alleged deficient performance in the
> drug-testing process because `the applicable statute and
> regulations concerning drug testing do not establish an
> intent to preempt the substantive common law at issue', where
> the FRA's drug testing regulations included an anti-waiver
> provision. 390 F.3d. at 628-29. Because we found no preemption,
> we reasoned there was no complete preemption."

Londeen, at 612-13 *quoting* Chapman, *supra.* and Peters, *supra.* Noting that the FRSA preemption clauses were substantially identical in both Chapman and Peters, the Court further

---

[4]In re Derailment Cases, 416 F.3d. 787 (8th Cir. 2005); Chapman v. Lab One, 390 F.3d. 620 (8th Cir. 2004) and Peters v. Union Pac. R.R., 80 F.3d. 257 (8th Cir. 1996).

reasoned that the different outcomes could be explained by looking first at the Secretary of Transportation's regulations "covering the subject matter of the State Requirement" and then any given regulation's solicitude for state law. Londeen, at 613. When reviewing the Londeens' claims, the Eighth Circuit found that the "FRSA track inspection regulations lack the solicitude for state law demonstrated by the anti-waiver clause in *Chapman*." Londeen, at 613-14. Going further, the Court revisited its analysis in the In re Derailment Cases, *supra.* wherein it found that the regulations [regarding railroad freight car inspections] were intended to prevent negligent inspection through very specific directives and that there was no indication that the "FRA meant to leave open a state tort cause of action to deter negligent inspection . . .". Londeen, at 614. Applying the In re Derailment Cases analysis, the Court found that "[i]t is clear the FRA regulations are intended to prevent negligent track inspection and there is no indication the FRA meant to leave open a state law cause of action." Londeen, at 614. Thus, the Londeens' negligent track inspection claims were completely preempted and the district court had subject-matter jurisdiction. Londeen, at 615.

In Gillenwater, *supra.*, the District Court held Londeen applicable because "[t]he Eighth Circuit found that there were FRA regulations that governed track inspection, and because there was no savings clause associated with those regulations, that the FRSA completely preempted the state cause of action. Similarly, Gillenwater alleges various safety violations under state law that are also governed by the FRA regulations. As a result, Gillenwater's claims are completely preempted by the FRA regulations . . .". Gillenwater, at 960-61 (internal citations omitted).

While Gillenwater's claims are completely preempted by the FRA regulations, the facts in this case suggest the Londeen decision should be applied to preempt some claims and not others. The result will be similar in both cases, as set out later.

9

The Eighth Circuit went to great lengths to distinguish the regulations at issue in <u>Peters</u>, <u>Chapman</u>, and the <u>In re Derailment Cases</u> and their relationship with the state claims present in each case. The <u>Londeen</u> case does not stand for the proposition that the mere reference to a federal statute in a state law complaint is enough to confer federal jurisdiction. To do so would be to reject the holdings of <u>Merrill Dow</u> and <u>Grable</u>. Cases holding that federal regulations under the FRSA preempted state law claims are very specific as to the nature of the claims involved; e.g., <u>CSX Transportation v. Easterwood</u>, 507 U.S. 658 (1993)(excessive speed of train); <u>In re Derailment Cases</u>, *supra.*(negligent inspection of freight railroad cars); <u>Elrod v. Burlington Northern Railroad Co.</u>, 68 F.3d. 241 (8th Cir. 1995)(inadequacy of warning devices at railroad crossing wherein said devices were federally funded and federally approved and were fully installed and operating at time of collision); <u>Mehl v. Canadian Pacific Railway, Ltd.</u>, 417 F.Supp.2d. 1104 (D.N.D. 2006)(negligent inspection of freight railroad cars, negligent training of inspectors, negligent emergency braking, negligent construction and maintenance of railroad freight cars; excessive speed of train; negligent handling of hazardous materials); <u>Kalen Enterprises v. BNSF Railway Co.</u>, 415 F.Supp.2d. 977 (D.Minn. 2006)(excessive speed of train, negligent emergency braking, negligent make-up and placing of freight railroad cars; negligent inspection of freight railroad cars); <u>Sheppard v. Union Pacific Railroad Co.</u>, 357 F.Supp.2d. 1180 (E.D.Mo. 2005)(adequacy of warning devices installed at railway crossing and negligent training of train crew).

Upon review of the relevant FRSA preemption cases , the United States Supreme Court cases of <u>Merrill Dow</u>, *supra.* and <u>Grable</u>, *supra.,* and the applicable federal regulations, the Court makes the following determinations:

> 1) claim for failure to slow down or stop where a specific, individual hazard exists; i.e. car on railroad tracks is **not** preempted;

> 2) claim regarding the adequacy of the warning devices at crossing is preempted
>
> 3) claim regarding failure to properly maintain crossing; i.e. overgrown vegetation is **not** preempted;
>
> 4) claim regarding failure to properly train crew is preempted;
>
> 5) claim for negligent operation of the train is preempted;
>
> 6) claim regarding failure to properly construct the railroad crossing is **not** preempted; and
>
> 7) claim regarding failure to monitor audible warning devices is preempted.

Thus, this Court retains federal question jurisdiction as to plaintiff's claims regarding the adequacy of the warning devices at the crossing, the failure to properly train the crew; the alleged negligent operation of the subject train by Bridger and Cassity; and the failure to monitor the audible warning devices (presumably the train's horn).

This leaves open the question of remand of the claims not preempted by the FSA. Although the Court realizes that plaintiff questions the removal in the first place due to the lack of consent by defendant Hodge; the Court finds this to be really a moot matter in light of the fact that a significant number of his claims are preempted and will remain under this Court's federal jurisdiction. Instead of requiring the parties to litigate this unfortunate accident in two forums, the Court will exercise its supplemental jurisdiction and retain all of the remaining claims. In this respect, the Court joins with the <u>Gillenwater</u> Court in determining that the federal court, in this situation, is the preferred forum to litigate this matter. This Court is fully versed in Missouri law and is quite capable of applying Missouri law to those claims which are not federally preempted.

Given the Court's findings, the plaintiff's motion to remand will be denied.

Dated this 1st day of September, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE